# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 03-249 (RWR) |
| | ) | |
| CHARLES KING, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Petitioner Charles King, Jr. filed an opposed motion to vacate, set aside, or correct his sentence and judgment under 28 U.S.C. § 2255, and to conduct an evidentiary hearing arguing that his trial and appellate counsel provided ineffective assistance. He also moved to have counsel appointed to represent him in pursuing the § 2255 motion.[1] Because the record of this case shows that King is entitled to no relief and the interests of justice do not require appointment of counsel, King is not entitled to an evidentiary hearing and his § 2255 and appointment of counsel motions will be denied. King has also moved to amend his § 2255 motion. Because King's claim is time-barred, his motion to amend will be denied.

---

[1] King also wanted counsel to help him pursue his motion under Federal Rule of Criminal Procedure 41(g) for a return of property. That Rule 41(g) motion has since been granted, making moot the argument that help is needed in pursuing the Rule 41(g) motion.

BACKGROUND

In May 2003, United States Park Police officers stopped King because he was "operating a vehicle without a front license plate." Presentence Investigation Report ("PSR") ¶ 4. During the stop, the officers noticed that King appeared to be nervous. The officers asked King to get out of his car and they patted him down. The officers also searched King's car. The officers recovered over $7,000 in cash from King's person and pieces of cocaine base and a loaded .45 caliber handgun from King's car. Id. King was indicted on two counts. Count One charged King with possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii). Count Two charged King with using, carrying, and possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).

King entered a plea of not guilty. His first trial in October 2003 ended in a mistrial. His second trial concluded with the jury finding King guilty on both counts on December 18, 2003. On July 2, 2004, King was sentenced to imprisonment for the minimum term of 151 months then required by the U.S. Sentencing Guidelines on Count One, and a consecutive sentence of 60 months' imprisonment, the minimum consecutive sentence required by statute, on Count Two. Barry Johnson represented King in both trials and at his sentencing.

King filed timely a notice of appeal and, through his counsel, Frances D'Antuono, filed an appellate brief arguing that denying King's motion to suppress the evidence the officers recovered from the pat down and search of King's vehicle was an error. King further argued that applying mandatory sentencing guidelines at sentencing was error under United States v. Booker, 543 U.S. 220 (2005). The D.C. Circuit affirmed King's conviction but held that a Booker error had been committed, and remanded the case to determine whether the error was prejudicial. United States v. King, 198 Fed. App'x 11, 12 (D.C. Cir. 2006). On remand, this court found that King had been prejudiced by the Booker error. On November 13, 2008 King was resentenced to imprisonment for a term of 121 months on Count One and the mandatory minimum consecutive term of 60 months' imprisonment on Count Two. Am. Judgment in a Criminal Case at 3. D'Antuono represented King on his direct appeal and at his resentencing.

King filed a pro se motion under 28 U.S.C. § 2255 to be resentenced on Count One and for his conviction to be vacated or, alternatively, that he be resentenced on Count Two. Mem. of Law in Support of King's 28 U.S.C. § 2255 ("Pet'r Mem.") at 11; Am. 28 U.S.C. § 2255 Mot. ("Am. Pet'r Mem.") at 6. King contends that Johnson and D'Antuono were constitutionally ineffective in three ways. First, King argues that the government failed to produce sufficient evidence that the cocaine base recovered from

King's vehicle was smokable cocaine as required by <u>United States</u>
<u>v. Brisbane</u>, 367 F.3d 910 (D.C. Cir. 2004). Pet'r Mem. at 3.
Thus, according to King, Johnson was ineffective by not moving
for a judgment of acquittal and for failing to raise the issue at
sentencing, <u>id.</u> at 4, and D'Antuono was ineffective because she
failed to raise this issue in King's direct appeal, <u>id.</u> at 11
n.5. Second, King argues that Count Two in the indictment is
duplicitous. <u>Id.</u> at 7. Thus, Johnson was ineffective for not
challenging the indictment, <u>id.</u> at 9, and D'Antuono was
ineffective for not raising this issue on direct appeal, <u>id.</u> at
11 n.5. Third, King argues that D'Antuono was ineffective at his
resentencing because D'Antuono did not argue that 18 U.S.C.
§ 924(c) does not carry a 5-year minimum mandatory sentence in
King's case. Am. Pet'r Mem. at 2. King also asserts that
§ 924(c) does not allow courts to impose a 5-year minimum
mandatory sentence where the related drug-trafficking offense
carries a higher minimum sentence. <u>Id.</u> at 3-6, 6 n.5. The
government opposes, arguing that even if trial and appellate
counsel's performances were deficient in the three ways that King
alleges, King "cannot show prejudice from his trial and appellate
counsel's alleged deficiencies because his claims are either
belied by the record or have no legal basis." Gov't Opp'n at 10.
King also filed a motion to amend his § 2255 motion to add a new,
unrelated claim.

DISCUSSION

In a § 2255 motion, a petitioner can move the sentencing court to "vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, . . . or [if] the sentence was in excess of the maximum authorized by law[.]"  28 U.S.C. § 2255(a).  The burden lies on the petitioner to prove the violation by a preponderance of the evidence.  United States v. Pollard, 602 F. Supp. 2d 165, 168 (D.D.C. 2009).

"A judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255) (noting that it is within the court's discretion whether to hold a hearing when it is the same court that presided over the petitioner's criminal proceedings).

I.   MOTION TO AMEND § 2255 MOTION

In April 2012, King moved to amend his § 2255 motion to include a claim that his trial counsel provided ineffective assistance by not fully and adequately explaining the plea the government offered and the potential consequences of proceeding to trial.  Mot. to Amend 28 U.S.C. § 2255 Petition ¶¶ 2-4.  King rejected the plea and was ultimately convicted and sentenced to a

longer period than the plea offer provided for.  <u>Id.</u> ¶¶ 2-5.

King's motion will be denied because it is untimely.

Initial § 2255 motions[2] are subject to a one-year statute of

limitations.  28 U.S.C. § 2255(f).  The limitation period runs

from the later of:

> (1) the date on which the judgment of conviction becomes
> final; [or]
>
> . . .
>
> (3) the date on which the right asserted was initially
> recognized by the Supreme Court, if that right has been
> newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral
> review . . . .

<u>Id.</u>  Here, King's sentence became final on November 28, 2008,

when the time period for filing a timely appeal expired.  <u>See</u>

Fed. R. App. P. 4(b)(1)(A), 26(a) (2008).  King did not file his

amended § 2255 claim until 2012, more than one year after his

conviction became final.  However, King argues that his amended

claim is not time-barred because it relates to a right newly

recognized by the Supreme Court made retroactively applicable.

Mot. to Amend 28 U.S.C. § 2255 Petition ¶ 15.  Specifically, King

contends that his new claim arises from <u>Lafler v. Cooper</u>, 132 S.

Ct. 1376 (2012), which the Supreme Court decided on March 21,

2012.  <u>Id.</u> ¶¶ 16-17.

---

[2] King's amended motion is an initial motion and not a
second or successive motion.  <u>See</u> <u>Littlejohn v. Artuz</u>, 271 F.3d
360, 362 (2d Cir. 2001) ("[M]otions to amend a habeas petition
should not be construed as second or successive petitions.").

The D.C. Circuit has yet to fashion a framework to determine
when or whether the Supreme Court has "newly recognized" a right
under 28 U.S.C. § 2255(f)(3).[3]  Regardless of the test adopted,
the Supreme Court cannot be said to have "newly recognized" a
right where it is doing no more than applying its preexisting
precedent.  United States v. Hopkins, 268 F.3d 222, 225 (4th Cir.
2001) ("[I]t is axiomatic that a new right cannot be 'initially
recognized' when the Court has merely applied its precedent to a
particular factual setting."); cf. Teague v. Lane, 489 U.S. 288,
301 (1989) ("[A] case announces a new rule if the result was not
dictated by precedent existing at the time the defendant's
conviction became final.").

Lafler did not announce a new right.  In Lafler, the Supreme
Court considered "how to apply Strickland's prejudice test where

_____

[3] Teague v. Lane, 489 U.S. 288 (1989), considers the
corresponding provision in 28 U.S.C. § 2254 which allows a state
prisoner to raise a claim even though "the applicant has failed
to develop the factual basis of a claim in State court
proceedings" if the claim relies on "*a new rule of constitutional
law*, made retroactive to cases on collateral review by the
Supreme Court, that was previously unavailable[.]"  28 U.S.C.
§ 2254(e)(2) (emphasis added).  Because that provision is limited
to constitutional claims, it is narrower than the § 2255(f)(3)
newly-recognized-right standard.  See United States v. Lopez, 248
F.3d 427, 430-31 (5th Cir. 2001) (holding that § 2255(f)(3)
"comprehends statutory rights as well" as constitutional rights);
United States v. Valdez, 195 F.3d 544, 546 (9th Cir. 1999)
(noting that "under § 2255(3), the right 'initially recognized'
by the Supreme Court need not be a constitutional one"),
abrogated on other grounds by Dodd v. United States, 545 U.S. 353
(2005).  The D.C. Circuit has yet to consider whether, despite
the differences in the statutes, the Teague framework applies to
initial § 2255 motions.

ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." <u>Lafler</u>, 132 S. Ct. at 1384. It is well-established that <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), laid out the "constitutional standards for effective assistance of counsel." <u>Lafler</u>, 132 S. Ct. at 1383–84. To establish <u>Strickland</u> prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In <u>Hill v. Lockhart</u>, the Supreme Court held that "the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel." <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). In <u>Hill</u>, the Court explained that in the plea context, the <u>Strickland</u> prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Id.</u> at 59. Applying <u>Strickland</u> and <u>Hill</u> where counsel's deficient performance caused the defendant to reject a plea offer, the <u>Lafler</u> Court held that to establish prejudice in this context,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less

        severe than under the judgment and sentence that in fact
        were imposed.

Lafler, 132 S. Ct. at 1385.  Because the holding in Lafler was

dictated by Supreme Court precedent, it is not a new right and

King's motion to amend his § 2255 motion will be denied as

untimely.[4]

II.  INEFFECTIVE ASSISTANCE OF COUNSEL

        The Sixth Amendment provides criminal defendants the right

to be represented by counsel.  U.S. Const. amend. VI.  Implicit

in this guarantee is that counsel will provide effective

assistance of counsel.  McMann v. Richardson, 397 U.S. 759, 771

n.14 (1970) ("[T]he right to counsel is the right to the

effective assistance of counsel.").  To establish that

representation was constitutionally deficient, King must show

(1) that counsel's representation fell below an objective

standard of reasonableness, and (2) that there is a reasonable

probability that, but for counsel's errors, the result of the

proceeding would have been different.  Strickland, 466 U.S. at

687-88.  The two-part Strickland test also applies to challenges

of ineffective assistance of appellate counsel.  Smith v.

Robbins, 528 U.S. 259, 285 (2000); United States v. Agramonte,

366 F. Supp. 2d 83, 86 (D.D.C. 2005).

---

        [4] Cf. In re Perez, 682 F.3d 930, 932-34 (11th Cir. 2012)
(holding that Lafler v. Cooper did not announce a new rule of
constitutional law under 28 U.S.C. § 2255(h)).

To establish the performance prong, the petitioner must show that counsel did not provide reasonable service under the "prevailing professional norms" given the circumstances. Strickland, 466 U.S. at 688. Prevailing professional norms are demonstrated by reference to "an attorney's ethical duties, including those which require counsel to bring skill and knowledge to the case and to provide zealous representation." Best v. Drew, Criminal Action No. 01-262 (RWR), 2006 WL 2035652, at *3 (D.D.C. July 18, 2006). In determining whether counsel's representation fell below an objective standard of reasonableness, "every effort [must] be made to eliminate the distorting effects of hindsight[.]" Strickland, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [since] [e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. at 689; accord id. ("Judicial scrutiny of counsel's performance must be highly deferential."). To establish that appellate counsel was incompetent in not raising a particular issue on direct appeal, "a defendant fights a particularly difficult battle, as he bears the burden of 'showing that a particular nonfrivolous issue was clearly stronger than issues that counsel did present.'" United States v. Brisbane, 729 F. Supp. 2d 99, 118 (D.D.C. 2010) (quoting Smith, 528 U.S. at 288).

As to the prejudice prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the trial context, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. In the sentencing context, the defendant may establish prejudice by showing that there is a reasonable probability that counsel's errors caused an increase in the defendant's sentence. See Glover v. United States, 531 U.S. 198, 203-04 (2001).

Courts have discretion to order their analysis of the two prongs and resolve an ineffective assistance of counsel claim on the basis of lack prejudice to the petitioner without examining counsel's performance under the first prong. Strickland, 466 U.S. at 697.

A.  Failure to raise Brisbane issue

According to King, Brisbane, 367 F.3d 910, required the government to prove that King possessed smokable cocaine or crack cocaine to meet its burden to prove that King violated 21 U.S.C. § 841(b)(1)(A)(iii). Pet'r Mem. at 4. King argues that the government did not prove that the cocaine base recovered from his vehicle was crack cocaine and that trial counsel was ineffective because he did not move for judgment of an acquittal under

Federal Rule of Criminal Procedure 29 on this ground and did not object to King being sentenced under § 841(b)(1)(A)(iii).  <u>Id.</u> at 4, 6.  King also asserts that appellate counsel rendered ineffective assistance of counsel by failing to raise this argument in King's direct appeal.  <u>Id.</u> at 11 n.5.  King asserts that he was prejudiced by counsel's deficient performances because it would have likely been found that <u>Brisbane</u> required that the government prove that the recovered cocaine base was either smokable cocaine or crack cocaine.  <u>Id.</u> at 6-7.  Had the government not met this burden, King argues, his statutory sentencing range and his sentencing guidelines range would have been lower.  <u>Id.</u>  The government counters that even if counsel's performances were deficient, the government "presented more than sufficient evidence" at trial that King possessed crack cocaine. Gov't Opp'n at 14.  As such, the government maintains, King cannot show that he was prejudiced.  <u>Id.</u>

<u>Brisbane</u> was decided on May 11, 2004 -- five months after King was convicted and two months before King was sentenced. When King was standing trial in 2003, Rule 29 provided that a motion for a judgment of acquittal may be filed in two instances. First, the defense may move for a judgment of acquittal before the offense is submitted to the jury.  Fed. R. Crim. P. 29(a) (2003).  Second, the defense may move for a judgment of acquittal "within 7 days after a guilty verdict or after the court

discharges the jury, whichever is later[.]"  Fed. R. Crim. P.
29(c)(1) (2003).  Brisbane was decided after December 30, 2003 --
the latest time that Johnson would have been able to file a Rule
29 motion.  Id.; Fed. R. Crim. P. 45(a).  Thus, Johnson was not
deficient in not raising this issue as grounds for a judgment of
acquittal.

In Brisbane, the D.C. Circuit examined the definition of
"cocaine base" as used in 21 U.S.C. § 841.  George Brisbane was
convicted by a jury of distributing five or more grams of cocaine
base in violation of § 841.  367 F.3d at 910-11.  After the
government rested, Brisbane filed a motion for a judgment of
acquittal arguing that "cocaine base" in § 841 means only crack
cocaine and "that the government had not proven [that] the
substance [he distributed] was crack as alleged in the
indictment."  Id. at 912.  The district court agreed that the
government had not proven that the substance was crack but held
that the government had still proven that Brisbane possessed
"cocaine base" in violation of § 841 because cocaine base refers
to more than just crack cocaine.  Id.  Brisbane appealed.  The
court of appeals acknowledged that "cocaine base" in § 841 is
ambiguous.  Id. at 913.  After considering the possible
interpretations of "cocaine base," the D.C. Circuit held that to
convict a defendant of violating § 841 under a provision devoted
to "cocaine base," the government must prove that the substance

is a smokable form of cocaine, such as crack cocaine. Id. at
913-14.[5]

King suffered Strickland prejudice if there is a reasonable
probability that King's objection to being sentenced under 21
U.S.C. § 841(b)(1)(A)(iii) would have been sustained or the court
of appeals would have vacated King's conviction. At trial, the
government presented evidence that the substance recovered from
King's vehicle was crack cocaine. Specifically, Officer
Adamchik, the arresting officer, testified that:

> [The substance found in King's car] almost looked like
> the inside of orange peels, a real white color. . . . It
> was big chunks of something. . . . I saw clear plastic
> baggies with white chunks inside of it. That definitely
> appeared to be crack cocaine to me[.]

12/10/03 Tr. at 54, 67, 78. Adamchik also referred to the
substance as "crack cocaine" and described it as an "off white
rock like substance" on the form he submitted with the substance
to the Drug Enforcement Agency for analysis (i.e., a "DEA-7
form"). Gov't Opp'n, Ex. 1. Also, King stipulated to the
admission of a report by Charles Matkovich, a forensic chemist,
identifying the "active drug ingredient" in the substance as
"cocaine base." Id. at 15, Ex. 1. Finally, Detective Tyrone
Thomas, the government's narcotics trafficking expert, viewed the
substance and testified that in his opinion, it was "wholesale

---

[5] The Supreme Court has since held that "the term 'cocaine
base' as used in § 841(b)(1) means not just 'crack cocaine,' but
cocaine in its chemically basic form." DePierre v. United
States, 131 S. Ct. 2225, 2237 (2011).

quantities of crack cocaine." 12/11/03 Tr. at 51-54. Detective

Thomas also offered general testimony that crack cocaine

> can be placed into a smoking device and smoked, heated,
> burnt, and the fumes would be smoked just like in a
> cigarette form, and that causes a more instant high; it
> causes a more addictive high, and it required less of the
> product itself to create this high that these drug users
> are seeking.

Id. at 45-46.

King argues that Officer Adamchik's testimony and the DEA-7

form are insufficient to show that the substance was crack

cocaine. King also objects to Detective Thomas's testimony

because Detective Thomas "was never involved in this case" and

"apparently saw the cocaine base for the first time at trial and

was only able to identify the substance in a seal-tamper proof

evidence bag because of the DEA-7 report." Pet'r Mem. at 5, 5

n.1. Of course, the time to object to the admissibility of this

evidence is long past. See Scott v. United States, 317 F.2d 908,

908 (D.C. Cir. 1963) (per curiam) ("'[O]bjection to the

admissibility of evidence should be made at the time it is

offered and the grounds therefor stated.'" (quoting Fuller v.

United States, 288 F. 442, 445 (D.C. Cir. 1923)). Moreover, King

does not substantiate his claim that Detective Thomas had no

basis for his identification that the substance was crack

cocaine.

In United States v. Eli, 379 F.3d 1016 (D.C. Cir. 2004) -- a

post-Brisbane case -- the D.C. Circuit upheld a district court's

finding that the government had proven that the substance at
issue was crack cocaine.  Eli pled guilty to distributing 50
grams or more of cocaine base in violation 21 U.S.C.
§ 841(b)(1)(A)(iii).  <u>Id.</u> at 1017.  After being sentenced to 121
months' imprisonment, Eli filed a motion under 28 U.S.C. § 2255
claiming that his defense counsel was constitutionally
ineffective because counsel had not disputed that the substance
Eli distributed was crack cocaine.   <u>Id.</u> at 1017-18.  The
district court conducted an evidentiary hearing and found that
Eli had distributed crack cocaine "beyond a reasonable doubt."
<u>Id.</u> at 1018.  On appeal, the D.C. Circuit held that the district
court's finding that the substance was crack cocaine was well
supported by the following evidence:

> First, the government chemist testified, and Eli did not
> dispute, that Eli's drugs tested positive for cocaine
> base.  Second, both the Drug Enforcement Agency's (DEA's)
> lab report and the U.S. Probation Office's Presentence
> Investigation Report (to which Eli acceded) stated that
> the drugs recovered in the sales were "rock-like."
> Third, the chemist indicated that the drugs were
> smokable.  Finally, he concluded that the drugs were
> properly identified as crack cocaine.

<u>Id.</u> at 1021 (internal citations omitted).

The evidence here is similar.  As in <u>Eli</u>, the chemist's
report here identified the substance as cocaine base.  The DEA-7
form identified the drugs as rock like.  Here, Officer Adamchik
also testified that the substance was in "chunks."  Detective
Thomas testified that the substance was smokable and he offered

his opinion that the substance was crack cocaine.  Accordingly,
based on the record, King has not met his burden of showing that
there is a reasonable probability that but for his counsel's
alleged deficient performance in not challenging his conviction
and sentencing under 21 U.S.C. § 841(b)(1)(A)(iii), his sentence
would have been different or his conviction would have been
overturned.

    B.   <u>Failure to object to Count Two as duplicitous</u>

    In Count Two of the indictment, the grand jury charged King
with violating 18 U.S.C. § 924(c) as follows:

> On or about May 17, 2003, within the District of
> Columbia, CHARLES KING, JR., did unlawfully and knowingly
> use, and carry during and in relation to, and possess in
> furtherance of, a drug trafficking offense, for which he
> may be prosecuted in a court of the United States, that
> is Count One of this Indictment which is incorporated
> herein, a firearm, that is, a Llama .45 caliber semi-
> automatic pistol.

Indictment 1-2.

    Although the count follows the statutory language, King
argues that Count Two is duplicitous because § 924(c)
criminalizes at least two separate offenses: (1) using or
carrying a firearm during and in relation to a drug trafficking
crime, and (2) possessing a firearm in furtherance of a drug
trafficking crime.  Pet'r Mem. at 8.  King contends that Johnson
was ineffective because he did not move to dismiss Count Two as
duplicitous and D'Antuono was ineffective because she did not
raise this issue in King's direct appeal.  <u>Id.</u> at 7-9, 11 n.5.

Federal Rule of Criminal Procedure 12(b)(3) states that "a motion alleging a defect in the indictment" "must be raised before trial[.]"  Fed. R. Crim. P. 12(b)(3) (2003).  Thus, King's appellate counsel was not deficient because she likely could not have raised this issue in King's direct appeal.

"Duplicity is the joining in a single count of two or more distinct and separate offenses."  <u>United States v. Hubbell</u>, 177 F.3d 11, 14 (D.C. Cir. 1999).  "It is well established that if a criminal statute disjunctively lists multiple acts which constitute violations, 'the prosecution may in a single count of an indictment or information charge several or all of such acts in the conjunctive[.]'"  <u>United States v. Brown</u>, 504 F.3d 99, 104 (D.C. Cir. 2007) (quoting <u>District of Columbia v. Hunt</u>, 163 F.2d 833, 837–38 (D.C. Cir. 1947)).  Section 924(c) is such a statute.  <u>See</u> 18 U.S.C. § 924(c) (providing additional punishment for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses *or* carries a firearm, *or* who, in furtherance of any such crime, possesses a firearm" (emphasis added)).  Count Two charges each act in the conjunctive.  Accordingly, if trial counsel had moved pretrial to dismiss the indictment because it was duplicitous, the motion likely would have been denied.  Therefore, King cannot meet his

burden to show that he was prejudiced by his trial counsel's performance.

C.    Failure to object to consecutive 60-month term of
      imprisonment for 18 U.S.C. § 924(c)(1) violation

King alleged that his trial and appellate counsel performed deficiently by not arguing that 18 U.S.C. § 924(c)(1) does not require that King be sentenced to "a term of imprisonment of not less than 5 years" "in addition to" his sentence for his "drug trafficking crime."  Am. Pet'r Mem. at 3.  Citing United States v. Whitley, 529 F.3d 150 (2d Cir. 2008) and United States v. Williams, 558 F.3d 166 (2d Cir. 2009), King argues that § 924(c)(1)(A)(i) is more properly interpreted as requiring a consecutive sentence only when there is no other provision that provides for a "greater minimum sentence."  Id. at 3-4.  Thus, according to King, because 21 U.S.C. § 841 requires a 10-year minimum sentence, § 924(c)(1) does not require that King be sentenced to a 60-month consecutive sentence.  Id. at 5-6.  King contends that he was prejudiced because had counsel raised this issue, King would have prevailed and King would have received a lesser total sentence.  Id.

This argument requires little discussion.  In Abbott v. United States, 131 S. Ct. 18 (2010), the Supreme Court explicitly abrogated Williams.[6]

---

[6] United States v. Tejada, 631 F.3d 614, 619 (2d Cir. 2011), also recognized that Abbott abrogated Whitley.

> We hold, in accord with the courts below, and in line
> with the majority of the Courts of Appeals, that a
> defendant is subject to a mandatory, consecutive
> sentence for a § 924(c) conviction, and is not spared
> from that sentence by virtue of receiving a higher
> mandatory minimum on a different count of
> conviction. . . . He is . . . subject to the highest
> mandatory minimum specified for his conduct in
> § 924(c), unless another provision of law directed to
> conduct proscribed by § 924(c) imposes an even greater
> mandatory minimum.

Abbott, 131 S. Ct. at 23.

In light of Abbott, King cannot show prejudice as a result of his counsel's alleged deficient performances.  For the same reason, King's contention that § 924(c) did not authorize a mandatory minimum 5-year sentence fails.

III. APPOINTMENT OF COUNSEL

There is no constitutional right to appointment of counsel in habeas corpus proceedings.  Brown v. Cameron, 353 F.2d 835, 836 n.1 (D.C. Cir. 1965).  However, under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, representation may be provided "for any financially eligible person who . . . is seeking relief under section . . . 2225 of title 28" if "the interests of justice so require."  18 U.S.C. § 3006A(a)(2).

> To determine whether appointing counsel is in the
> interests of justice, a court must consider 1) the
> petitioner's likelihood of success on the merits, 2) the
> ability of the petitioner to articulate his claims *pro se*
> in light of the complexity of the legal issues involved,
> and 3) the factual complexity of the case and whether the
> petitioner has the ability to investigate undeveloped
> facts.

United States v. Washington, 782 F. Supp. 2d 1, 3 (D.D.C. 2011) (citing United States v. Waite, 382 F. Supp. 2d 1, 2 (D.D.C. 2005)).

King was unlikely to succeed and does not succeed on the merits of his three ineffective assistance of counsel claims for the reasons stated above. King's motion does not allege that any further fact investigation is necessary. Moreover, King cited legal authority throughout his § 2255 motion and articulated lucidly supporting arguments for his claims. Accordingly, the interests of justice do not require appointment of counsel under these circumstances. See 18 U.S.C. § 3006A(a)(2).

CONCLUSION

King's amended claim is time-barred. King failed to show that his trial and appellate counsel rendered ineffective assistance of counsel under Strickland. The interests of justice do not warrant appointment of counsel here. Therefore, King's § 2255 motion, motion to amend his § 2255 motion, motion for appointment of counsel, and motion for initial consideration of his motion to amend his § 2255 motion will be denied. King's motion for an update of the status of his § 2255 motion will be granted. A separate Order accompanies this Memorandum Opinion.

SIGNED this 9th day of December, 2013.

/s/
_____
RICHARD W. ROBERTS
Chief Judge